Next case of the morning is number 1660831, Cox v. Provident Life & Acidnt Ins Co. Mr. Nobles. May it please the court, I'm James Nobles representing David Cox, the appellant. Mr. Cox purchased two Provident Life & Acidnt insurance policies, one in 1987 and one in 1995. The one he purchased in 1987 was $500 per month. As a result, if he was disabled as a result of accident or sickness. And the one he purchased in 1995 paid benefits of $3,000 per month. This policy is kind of a hybrid, they don't sell it anymore but this policy has some provisions in it that are at best ambiguous, but the district court found it was not ambiguous but the application of the policies to the facts renders it ambiguous because of the fact that the policy says this, and it's page 22 of the record, it has a preexisting condition limitation which does not apply in this case according to the 30B6 witness. I don't think the policy is ambiguous. I don't think that's what Judge Barber ruled on. That's right. He found it was not ambiguous but the application of how it was determined I think is ambiguous because of this fact. This policy says at page 22 of the record, in no event will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one injury or sickness or from both will not matter. We will pay the benefits for the disability which provides a greater benefit. If you go back two pages before that or three pages before that on page three of the policy at the record, page 20, this is a declarations page and it says if you sustain injuries for total disability starting before age 65, it's payable for life. If your disability results from sickness, and they got a graduated scale from age 61 to 65, but it cuts off at 65 if the disability results from sickness. Now, David Cox was 60 years old at the time that he sustained an injury on December 26, 2008. Fell in a hole, twitched his knee while he was walking his dog and he subsequently went to the doctor. His knee swelled up, no question about that. He had a lot of infusion in his knee. He went to the doctor. The doctor sent him for an MRI. MRI was done I believe January 6, 2011 and that revealed a tear in the medial meniscus and a tear of the medial collateral lipid. His treating physician referred him to an orthopedic surgeon, Dr. O'Mara, who performed a medial meniscectomy by arthroscopic means and Mr. Cox never got well. He submitted a claim to Providence on February 3, 2011. He reported the claim to Providence. Well, this policy is not an either-or policy. It can be a combination of injury and sickness which causes a disability. If that's the case, he's entirely benefits for the rest of his life. Page 8, passed at age 65. Now, the problem is whenever it was reported to Providence, even though the attending physician's report shows that his disabilities resulted from accident. Your Honor, excuse me just a moment. I'm getting a little dizzy here. I had some atrial fibrillation back in May, but I think I can finish. Back when it- Do you need water? I'm fine, I think. Once they reported it to Providence, they coded the cause of the disability as illness. Right. Immediately. Even though the attending physician's report says it's a result of an accident. Now, after the surgery, Mr. Cox didn't get well. Knee continued to swell. He underwent, I think, five or six surgeries during the year 2011. Not until this date has he recovered from that injury and affects the injury. Well, that's all the- And, you know, when I read Judge Barber's opinion for the first time, it seemed to make a pretty convincing statement that he just had a lot of things wrong with both knees traceable to arthritis, so that he had- If we had had an anatomical map of his knee, Judge Barber seemed to be convinced that the problem arising from the injury was different from, in different locations within the knee, from the later arthritic problems. And- I'm sorry. Go ahead. The problem with that premise, Your Honor, is that both Dr. Leahy, Dr. Matheny, and Dr. Shelton all agreed that the effusions resulting from, and it's the swelling of the snow wheel fluid that circulates throughout the entire knee, can cause or contribute to the deterioration of the structures in the entire knee, including all those compartments that were affected. So we say that Judge Barber, while he adopted the Provident Life and Accident Insurance Company doctor's opinions, we had an opinion from Dr. Shelton, which is pointed out in the brief, and in his deposition testimony that he was of the opinion that the injury caused or contributed to the disability. And was Dr. Shelton the treating doctor? He was. Okay. He did the surgery. Oh, he's an orthopedic. Yes, ma'am. Oh, okay, right. So you're-the bottom line of your argument, as I understand it, is that there's a material-there's an issue of material fact which should preclude a summary judgment here. Absolutely, yes. Is that right? Yeah. In our reply brief, we set out 13 different points inciting to the record why the summary judgment should be reversed. And the basics of it are Dr. Shelton's February 11, 2015 report and the August 14 medical record say this. All of his knee problems started with an injury when he fell in a hole. He has a torn meniscus and his injury is patellofemoral cartilage now resulting in arthritic change. I think this is a process that was induced by trauma. That's at the record at page 903. Now, Dr. Shelton sent three or four medical records in, two probably state exactly the same thing. His deposition testimony, while it may be ambivalent and could be ambiguous, is not a question for the district court to determine. That's for the jury. Did Judge Barber's opinion take that into consideration? It did not. Okay. Now, under Tolan v. Cotton and the Addix v. SH Press Company case and Anderson v. Liberty Lobby, we say there's a genuine issue of material fact that should be decided by the jury. Now, we cite Davis v. Davis in here, and it says it's axiomatic that the proof offered by the plaintiff should be considered, that the non-movement should be considered as true on the motion for summary judgment. That didn't happen here, we don't think. Now, in the Dufresne v. Indemnity Company of North America, 303-Fed 2nd, 788-789, an opinion of this court says that where you've got a valid expert, that's for the jury to determine. Mr. Nobles, we understand the law here pretty well. Yes, ma'am. If you'd feel better sitting down, reserving a few minutes for rebuttal. I mean, feel free to make whatever points you want to make, but . . . I've said pretty much what I need to say. All right. Well, and I also . . . We're getting in touch with a nurse who's on duty in the district court over there, so if you don't feel good, you'll be able to get some help here. I don't want to . . . I'm sorry. I don't want to be presumptuous, but I don't want anything happening on our watch. I understand. Thank you very much. Yes, sir. But you have time for rebuttal. Mr. Mansfield? May I please support Kenna Mansfield for Provident Life and Accident Insurance Company? The issue in this case is very simple. Whether Mr. Cox's ongoing restrictions and limitations are due to the osteoarthritis in his knees, which is considered a sickness or disease under the policy, or from both that sickness or disease and an injury. As you've heard, Mr. Cox contends that it is from both an injury and a sickness. He has the burden of proof, which means, obviously, he has to come forward with evidence sufficient to establish that it is probable, that it is more likely than not that the injury combined with the sickness to approximately cause his restrictions and limitations. So what is the injury that he contends is combining to cause this disability? As you've heard, at the very base of his case, he contends that during this incident on December 26, 2010, when he fell or stumbled over some uneven pavement, he claims that he tore his medial meniscus. However, he cannot prove that it is more than possible that occurred as a result of the fall. The initial MRI showed that he had degeneration in his menisci. Neither the MRI nor the operative note thereafter, when he had the meniscectomy, indicated that the tear was acute. Dr. Shelton explained that the treating orthopedic, he was not the initial one, but he was for most of the treatment at issue, he explained that you tear, you get a torn meniscus in one of two ways, either through trauma, through an accident, or through degeneration. As we age, our meniscus degenerates and we have tears. All of the doctors in this case, Dr. Shelton, Dr. Southworth, Dr. Leahy, they all agree that you simply cannot tell how Mr. Cox tore his meniscus. That is, whether it was as a result of the accident or whether it was simply degeneration. Why isn't that for the jury then? Because the plaintiff has the burden, Your Honor, of coming forth with some proof to show that it's probable, to show that it's more likely than not. All that there is, as Judge, as Dr. Shelton said, it's possible. That's it. I don't know why that isn't a jury question for the jury. I mean, ultimately you may win because the preponderance of the evidence may be in your direction, but I just don't understand why it isn't a jury question. They sit and listen to all the medical experts and render a decision. Because none of the medical experts say that it's probable or more likely than not. And the law coming out of this court, as well as coming out of the Mississippi Supreme Court, is that when it comes to causation, the plaintiff has the burden of proving causation that it's probable. The court has repeatedly held, in the Patterson v. Radio Shack case that I cited, has repeatedly held a mere possibility is not probative, has no probative value that does not carry the day for the plaintiff. And that's all he has. Check, check, check, checking, hello, hello, hello. Is that it's probable, that it's possible. But even if we assume that the tear occurred in the fall, which, like I say, it's only possible, but even if we assume that, it was surgically repaired, and nobody contends that he's got, that Mr. Cox has any ongoing restrictions or limitations resulting from the tear. Well, all I, I just didn't read, I didn't read this argument exactly in what Judge Barber found. Well, because, I mean, I read Judge Barber pretty carefully, and of course I don't say I'm, I'm certainly not an expert in the knee, but it says, he's saying that mainly the insurance company is relying on the idea that the fall did not cause the progression of osteoarthritis, and any injury sustained, quote, in other words, not that there was not a tear, or, but it was not caused, that, that you're saying there's no injury. You're saying it's questionable whether, and I don't read that in these, in the way Judge Barber analyzed the case. That's on page 19 of his opinion, Your Honor. He, he refers to some of Plaintiff's arguments, and he says, Cox argues that there's a fact as to whether the disability resulted from the fall, and then he goes on to explain, in other parts of his deposition, however, Shelton testified that while it would be consistent to a reasonable degree of medical probability that Cox sustained the tear, there was no way to conclusively determine whether the initial tear was caused by the fall or whether it was degenerative in nature and not at all associated with the event. So is that your principal argument here, or is it? No, that, that's, that's ground one. That's number one. Second, and this is what I was getting to, Your Honor, Plaintiff's claim is not that the meniscal tear causes his ongoing restrictions or disabilities. There's no issue about that. That was surgically repaired. His claim is that the tear and the subsequent meniscectomies led to, or as he has said, and he said just a moment ago, can lead to a progression of osteoarthritis in the knee. So we need to look at this from two angles, and I will get into just a little bit, Your Honor, the anatomy of the knee. And those two angles are the medial compartment and the patellofemoral compartment. The knee has three compartments. The patellofemoral compartment is where the patella, the kneecap, sits on the trochlear groove. Then there's the medial compartment where the femur has two condyles that sit on the tibia with the meniscus between them. And the inside condyle is the medial condyle. The outside is the lateral. Those form two other compartments of the knee. There are three total, the patellofemoral compartment, the medial compartment, and the lateral compartment. The doctors agree, and I will concede, that a tear in the meniscus, in the medial meniscus, can, and subsequent meniscectomies, can lead to a progression of osteoarthritis in the medial compartment. Not that it did, but that it can. But they all agree that, based on the initial surgery, Mr. Cox had preexisting arthritis on his femoral condyles. While it's reasonable to believe that that could have gotten worse, subsequently as a result of the tear and the meniscectomies, the evidence is that it didn't. On October 27, 2011, Dr. Shelton had another MRI done. That MRI showed erosion of articular cartilage, arthritis, underneath the kneecap on the outside. It showed that arthritis in the patellofemoral compartment. It did not show any arthritis in either the medial or the lateral compartment. Well, MRIs aren't the best at picking up arthritis. They did pick up the bad arthritis in the patellofemoral, but not the other two. But Dr. Shelton performed surgery a few days later, early November 2011. It was a chondroplasty. He was cleaning out the arthritis in the patellofemoral joint. While he was in there, he noted that there was grade 4 bone-on-bone arthritis on the underside of the kneecap. He said there was some arthritis on the femoral condyles, grades 1, some grade 2. He referred to it in his deposition as minimal damage, which he then smoothed off. Dr. Shelton saw Mr. Cox the following month, and he was still complaining of his knee. At that point, Dr. Shelton said, I believe that all of his problems with his knee is patellofemoral arthritis, grade 4 arthritis. He did surgery later that month in December 2011. That's a year after the fall. When he was in there, and he was doing a partial knee replacement, he shaved off the back of the kneecap and put an alloy prosthesis that sat on the trochlear groove. When he was in there, he took photographs of the inside of the knee. He went over those photographs with us in his deposition. He pointed out on the kneecap the grade 4 patellofemoral arthritis, which he described as severe, as opposed to, and those were the words he used, as opposed to a normal femoral condyle, which that's pretty normal, he said, as he pointed to the photos of the femoral condyle. He said that's his weight-bearing articular cartilage, which is pretty normal. That's at page 734 of the record, page 21 of his deposition. In his operative note found in his record, he repeated, the weight-bearing surfaces of the knee were normal. So there's no evidence that that's ever changed, that that's ever worsened. So while a torn meniscus and a subsequent meniscectomy can lead to a progression of arthritis in the medial compartment, there's no evidence that it did so here. More particularly, there's no evidence that the mild arthritis in his medial compartment, which preexisted the fall, has resulted in any restrictions or limitations. Instead, all of the doctors are in agreement that the restrictions and limitations are due to Mr. Cox's patellofemoral arthritis in his knee, the osteoarthritis in his kneecap, or between his kneecap and his trochlear groove. So let's talk about the patellofemoral compartment. Mr. Cox's theory, and you heard it alluded to a little while ago, is that this torn medial meniscus and the subsequent meniscectomies and the effusion released, as has been described previously in this case, a cascade of enzymes that circulated throughout. Let me just ask you a question. How do you think Judge Barber felt so comfortable in reviewing all this evidence and coming to this conclusion that there's no material fact issue? Because the doctors are all in agreement. This is a medical issue, and the doctors are completely in agreement on this. His treating physician, Dr. Shelton, testified totally in line with the company's doctor that they consulted in making the claim determination, as well as an expert orthopedic surgeon that I retained. Some of the transcript testimony, Dr. Shelton says the trauma to Cox's left knee when he fell in the hole on December 26, 2010, caused or contributed to the cause of his disability. How do you get around something like that? Judge Prado, the question, and I think it's important to look at the . . . All of Cox's knee problems started with an injury when he fell in a hole. Right. There's a couple of things there. The last one I'll address first, when he wrote in his records all of his knee problems began, he testified in his deposition, that's what Mr. Cox told him. That's his history. That's his history. Why is that not believable when his knee swells up right after that? Because those were Mr. Cox's words. What I'm saying is it's consistent with the story that he tells that his knee swelled up, right? Something happened. Absolutely, Your Honor, and I thank you for that because I don't think I've made it clear. We're not contending that nothing happened at that point. He did have an injury. You're saying it didn't cause the medial meniscus problem, right? No, I'm saying we don't know if it did or not. But at that point it didn't matter. This policy pays benefits to age 65 if it's due to sickness or accident, but only beyond if it's due to an accident or the accident contributes. So early on, yeah, he was disabled when he had the meniscectomy. Whether it was due to the accident or not didn't really matter. He was entitled to benefits. What matters is at age 65 and going forward, what is his disability due to? And that, the proof is from all of the doctors, it's not related to any injury that he may have sustained in the fall. The question, Judge Prado, that you were referring to in Dr. Shelton's deposition, he was asked a question and the entire question needs to be considered. He was asked, given Mr. Cox's conditions found by the initial MRI and Dr. O'Meara on the initial visit and the meniscectomy, do you have an opinion to a reasonable degree of medical probability as to whether the trauma to his left knee when he fell in the hole on December 26th caused or contributed to the cause of his disability? Several things about that question. One, it was very vague in general, but the trauma that's referred to can only be the torn medial meniscus. When he fell and subsequently had an MRI, it revealed a torn medial meniscus and a sprain of his MCL. No one's contending or has contended that the sprain to the MCL is resulting in his ongoing restrictions and limitations. So he's got to have been referring in that question to the torn meniscus. But as I've explained earlier, he can't prove that the meniscus was torn in that fall. And that's exactly what Judge Barber found in his opinion on page 19. He addressed that specific testimony. So the question had a faulty premise to begin with. Secondly, the question was relating the time. It doesn't specify in the question the time, but it talks about the initial MRI, the initial visit, the meniscectomy, which was early on. If that's the question, whether that fall contributed to his initial disability, certainly. There's no issue about that. But the question is his ongoing. Five years later, what is his restrictions or his restrictions and limitations? What are they due to? And Dr. Shelton gave very specific testimony about that, which is totally in line with the other doctors. He said, if you twist your knee in a hole and you end up with some chondromalacia, that's another word for arthritis, on the medial femoral condyle, he said those two things can be associated. Can be. Not that they are. Can be. But, he said, if you twist your knee in a hole and you end up with grade 4 patellofemoral arthritis, that is not likely the etiology. He said the etiology of that is most likely degenerative, a degenerative process. All of the other doctors testified the same way. And, in fact, they all have said, whether Mr. Cox had this fall or not, he would have had this degenerative arthritis. Once more, what did you, I mean, he said this had something to do with the circulation of synovial fluids. What did you doctors say about that? Thank you. Dr. Southworth explained that. That argument really defies the medical proof and logic. As Dr. Southworth explained, if that happened, and it can happen in 12% of the patients, but it didn't here, and we know that because if that happens, what you would expect to find, as Dr. Southworth explained, is a buildup of arthritis in all three compartments. If that fluid is circulating, you would find it in the medial compartment on the femoral condyle, in the lateral compartment, and in the patellofemoral compartment. But we don't here. It's only in the patellofemoral compartment. He's got very mild arthritis in the medial and lateral, but he had that when he fell. Do I read this correctly to say that Dr. Southworth said the plaintiff developed right knee degenerative changes, meniscal tears, and articular arthritis in his right knee? Exactly. But a tear. Exactly. Well, from a degenerative tear. Right. He never complained. Mr. Cox never complained about his right knee for two and a half years after the accident. I take it he was a little bit overweight. Yes, ma'am. What the doctors, like I say, they all concluded that there was no relation to the meniscal tear in his left knee and the patellofemoral arthritis. And they all came to that opinion without knowing that Mr. Cox had a history of problems with the patellas in his knee. We learned in his deposition he had a lateral release performed back in the 1980s. Dr. Shelton said you have a lateral release. You have a lateral release to correct a problem with patella malalignment. Your patella's not tracking on your trochlear groove. That's the reason he had it. Dr. Shelton said that can cause patellofemoral arthritis. Moreover, he said, and other doctors have said, it's almost a certainty. If you have that in one knee, you're going to have it in the other. That's what happened here. Mr. Cox had patellofemoral arthritis in his left knee, and then he had it in his right knee. And that is the cause of his disability. There's no connection between that and any possible torn medial meniscus or any medial meniscus torn as a result of the fall. Okay, we have your argument. Thank you. Thank you. Mr. Nobles, do you want to get up here again? I don't think I do. Well, I don't want you to. You feel good enough? I am feeling better. Okay. Well, the CSO back there will be happy to get you to a nurse. Okay. Yeah. I heard the argument of counsel, and this is the same thing that's throughout the entire claim. The problem they have with that argument is their designated medical officer, Dr. Matheny, who's in Chattanooga, reviewed these records. And during his deposition, he indicated that the problems occurred following the injury. Now, if you take that testimony, we think that's enough to create a genuine issue of material fact. The fact that Dr. Walter Shelton may have said in his deposition that you can't tell exactly when the injury occurred, that's kind of like saying, well, exactly what happened in this automobile wreck that caused these injuries. The doctors have to rely on the history, and the history was consistent with Mr. Cox having fallen in a hole and torn the median meniscus. Mr. Cox testified to that, and his testimony is worthy, too, under the rules. But Dr. Shelton's testimony, if you look at the last, when I examined Dr. Shelton, I didn't ask very many questions because I realized what this policy stated. And I asked him, do you have an opinion to a reasonable degree of medical probability as to whether or not the fall in a hole approximately caused or approximately contributed to the disability which Mr. Cox has as a result of the knee problem? And he said yes. That creates a genuine issue of material fact under Tolan and the Addix v. St. Sage Grass Company case. Now, the 30B6 witness, Ms. Walsh, testified several times. We don't question the fact that Mr. Cox sustained a tear of the median meniscus when he fell in the hole. She also testified that the preexisting clause and the five-year look-back period, which is contained in the policy, does not apply. Now, the fact that he may have had a lateral release five years or 10 years or 15 years before is not the issue. Did he have an injury as defined by the policy? And the answer is yes. Did he have what Provident claims is a sickness, which is osteoarthritis? He had mild tricompartmental osteoarthritis at the time he fell and injured his knee. And then you go back and look at the policy and apply the policy language to those facts and the testimony of the doctors. Then you get to the end result that, yes, he's entitled benefits past age 65 because the injuries, which he sustained on December 26, 2010, which is undisputed by Provident, and the underlying osteoarthritis, which were clearly aggravated by the injury, according to Dr. Shelton. He sent several reports in that indicate just that, that the origination of Mr. Cox's problems with his left knee was the trauma that he sustained. So if you put all that together and compare it to the policy language, construing the policy as written, Mr. Cox at least created a genuine issue of material fact for a jury to determine whether or not he's entitled benefits past age 65. Do you have a doctor on your own side? I mean, I know Dr. Shelton was your treating orthopedic fellow, but did Mr. Cox have another doctor that is his principal expert? No. We relied on Dr. Shelton as an expert in the field of orthopedic surgery. Okay. But that's the substance of our argument. We created a genuine issue of material fact, and the case ought to be reversed and remanded for trial. Okay. Thank you very much. Thank you.